From a decree granting defendants' motion to dismiss plaintiff's bill of complaint, the case is brought before this court by appeal.
The trial court filed a carefully prepared and well-reasoned opinion which we quote in full:
"The bill of complaint filed in this cause on the 4th day of May, 1942, invokes the jurisdiction of the court under 3 Comp. Laws 1929, § 13903 (Stat. Ann. § 27.501), commonly known as the declaratory judgment *Page 564 
act, and alleges that the plaintiff is the holder of bonds, of which the defendant, Martin and Branches drain district, is maker; that the bonds, dated November 1, 1927, and purchased by the plaintiff on February 7, 1928, have been in default since June 1, 1931; that each bond, as disclosed by a copy attached to the bill as an exhibit, recites that it is one of a series of 1,383 bonds of like date and tenor, except as to maturity; that the principal and interest is payable out of instalments of drain taxes assessed against the defendants, and that the total amount of the issue does not exceed the aggregate amount of the instalments of drain taxes levied; that defendants' refusal to pay the bonds is grounded on the claim that the Martin and Branches drain is, in fact, not a drain but an improvement which was outside the jurisdiction of the drain commissioner. The relief prayed for in the bill of complaint is a judgment determining plaintiff's bonds to be valid, mandatory injunctions against the defendants requiring them to levy assessments and additional assessments under and pursuant to 1 Comp. Laws 1929, § 4940, as amended by Act No. 129, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4940, Stat. Ann. 1942 Cum. Supp. § 11.104), and a mandatory injunction requiring the county and the county officials to advance money from the general fund of the county to the drain fund for the payment of the bonds.
"The question now before this court is on the granting or denial of a motion to dismiss the bill of complaint, timely filed under Michigan Court Rule No. 18 (1933). The general rule is that on a motion to dismiss all properly alleged facts stated in the bill are accepted as true, but this motion comes within the limited exception allowed by Court Rule No. 18 and is properly supported by affidavits claiming defects which do not appear on the face of the bill of complaint. Defendants' motion cites six grounds as reason for dismissal of the bill of complaint but the court finds it necessary to consider only one of the grounds which come within the provisions *Page 565 
of Court Rule No. 18 (1933), namely, that the cause of action is barred by a prior judgment.
"The facts are not in dispute. On December 31, 1932, a bill of complaint was filed in the United States district court in Detroit, Federal equity cause No. 5723, which suit proceeded to judgment in the district court and to judgment in the circuit court of appeals at Cincinnati (Bloomfield Village DrainDistrict v. Keefe [C.C.A.]), 119 F.2d 157. Certiorari was denied by the United States supreme court on the 13th day of October, 1941 (Keefe v. Bloomfield Village Drain District,314 U.S. 649, 650 [62 Sup. Ct. 95, 86 L.Ed. 520, 521]). It clearly appears from the bill of complaint in the Federal court case, the district court judgment, and the judgment of the circuit court of appeals that the Federal suit was a class suit upon the entire series of Martin bonds, in which the identical relief sought in the case now before this court was prayed for in the bill of complaint and granted by the district judge to the plaintiff and to all other holders and owners of bonds of the Martin and Branches drain district. Had there been no appeal from the district court judgment, the plaintiff in the case before this court would have received all the relief and benefits which it now seeks to obtain. All of the defendants in this case were party defendants in the Federal suit.
"The circuit court of appeals in reversing the judgment of the district court finally adjudicated and determined:
"(1) The entire Martin and Branches drain proceedings to be plainly null and void for want of jurisdiction and that the drainage district and other defendants were not estopped from denying the validity of the bonds where the proceedings were void for want of jurisdiction;
"(2) It is the law of Michigan that where the projects are illegal not from mere procedural deficiency but from total lack of authority to construct the project, bonds issued to defray the expenses of *Page 566 
such projects are void in the hands of innocent holders;
"(3) That the district court erred in ordering the county officials to proceed with assessments and in the issuance of injunctions against the defendants and ordering the county to make advancements into the drain fund;
"(4) That the unappealed from decision of the State court decreeing the Martin and Branches drain district proceedings to be illegal, unlawful, null and void and enjoining the levying of assessments was res judicata as to the rights of all Martin bondholders. The foregoing decision of the circuit court of appeals was cited with approval and followed by the Michigan Supreme Court in the case of City of Highland Park v. OaklandCounty Drain Commissioner, 300 Mich. 501.
"Plaintiff now claims that it is not bound by the Martin and Branches drain district Federal court decision because it was not named as a party to the suit and the Federal class suit was not a class action as would constitute the decision therein a final determination of its rights; that, therefore, the claim of a prior judgment cannot be pleaded in this case as a good defense.
"The bonds involved in this suit are the same issue as those litigated in the suit of Township of Erin v. County of Macomb, et al., in which a decree of this circuit was entered September 16, 1932, wherein it was decreed:
"`That all proceedings and actions heretofore taken by the defendants as set forth in the bill of complaint filed in this cause, relative to the survey, location, establishment and construction of the Martin drain, the extension of the outlet thereof, and all apportionments and assessments made thereon, against the plaintiffs and the lands of said plaintiff, are decreed to be illegal, unlawful, null and void, and of no effect whatsoever, and said apportionments and assessments be and are hereby *Page 567 
cancelled, vacated and set aside, and the said lands of plaintiffs be and are hereby forever discharged of and from the apparent lien thereof.'
"This decree was entered subsequent to the Michigan Supreme Court decision in the case of Township of Lake v. Millar,257 Mich. 135, involving a similar legal issue.
"These last two mentioned decisions have never been modified, reversed, or set aside. They have been followed and cited in innumerable cases cited in counsel's briefs, including the Federal court litigation above mentioned (119 Fed. [2d] 157), decided in 1941.
"This court would have to be guided by these decisions in the determination of the present suit. The issue therein disposed of, namely the illegality of the drain proceedings and bond issue, would control the disposition of the instant litigation, considering the record made on this motion to dismiss. There is no issue of fact remaining to be tried that can change the established decisions, nor their applicability to the present litigation.
"It seems to be a well-known equitable doctrine and the authorities in support thereof are stated at length in the case of City of Detroit v. Railway, 226 Mich. 354, and again inAmerican State Savings Bank, Trustee, v. American StateSavings Bank, 288 Mich. 78, and there is no purpose in repeating them again at length. Brief extractions from the Court's opinion are as follows:
"`It seems to be a well-known equitable doctrine that virtual representation clearly establishes the rule that where it would be totally impracticable to bring all the members of a definite class before the court, where they may have an opportunity of appearing, if they elect so to do, but where certain of their class are before the court, and the proposed decree is beneficial, that all parties are bound by the action of the court. It was this question that *Page 568 
presented itself to the court at the very outset of this hearing, whether or not, in the absence of all bondholders being made parties to this litigation, any decree made by the court would be binding upon the absent parties, and while there does not seem to be any case in point, there are plenty of decisions bearing upon and involving the effect of class suits to such an extent in fact that there has arisen, and is known in the law, a rule of class representatives to a suit. * * *
"`The rule is well established, that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be maintained against a portion of a numerous body of defendants, representing a common interest. * * *
"`Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation, by death or otherwise, that it would not be possible, without any great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject matter of the suit is common to all there can be very little danger but that the interest of all will be properly protected and maintained. The case in hand illustrates the propriety and fitness of the rule. There are some 1,500 persons represented by the complaints, and over double that number by the defendants. It is manifest that to require all the parties to be brought upon the record, as is required in a suit at law, would amount to a denial of justice. The *Page 569 
right might be defeated by objections to parties, from the difficulty of ascertaining them, or if ascertained, from the changes constantly occurring by death or otherwise.
"`In a class suit a member of the class not named as a party may not move to set aside the decree after the time for appeal has expired. Under the theory of class representation, the rights of all members of the class have become adjudicated by the decree.'
"In this case there was one common issue of a series of bonds. The bondholders had a common interest and right in having the bonds decreed valid and the assessments enforced. In fact, recovery could not have been had for some of the bondholders without complete relief for all because if any of the bonds were decreed valid they were all valid and any assessments which were levied must be for the benefit of all bondholders. The entire series of 1,383 bonds could exist as valid bonds and come into being only as a part of valid proceedings. The drain commissioner is without jurisdiction to issue bonds except pursuant to and as a part of valid proceedings.
"It is the law of this State that where the drain commissioner acts without jurisdiction the proceedings are void. The proceedings could not be void and the drain commissioner without jurisdiction as to a substantial portion of the bonds as decreed by the Federal court and the drain commissioner retain jurisdiction and cause assessments to be levied for payment of plaintiff's bonds as all the bonds were issued as one series and as part of the same proceedings. It is conceded that bondholders in the Federal action were honestly, fairly and fully represented. That the parties were numerous and had a common right and interest in having the bonds decreed valid and the levying of the assessments cannot be disputed. There can be no question but that the Federal class action was such as *Page 570 
to be binding upon the plaintiff in this case. In addition, it is important to note that irrespective of the determination of this court the Federal court had jurisdiction to determine and did determine that the bondholders were honestly, fairly and adequately represented and that the Federal action was a class suit binding upon all bondholders, which of necessity includes the plaintiff in this case. The defendants' motion to dismiss the bill of complaint should be granted on the ground raised in the motion that the instant suit is barred by a prior judgment of the Federal court.
"It is not necessary for a final decision of this case to hold that the Township of Erin Case is res judicata of the rights of all bondholders because this court finds and determines that the circuit court of appeals settled this question in the Federal Martin bond suit when it held:
"`The officers of the drain district represented all the creditors of the district, including the bondholders, in the State court cases, and thus appellants had notice and were given their day in court in those cases. In the cases where these projects have been found invalid by the Supreme Court of Michigan or lower State courts whose judgments have become final, the drain commissioners were parties and the holdings were uniformly to the effect that such illegality made the entire proceedings void, deprived the drain commissioner of jurisdiction in the premises, and required cancellation of the assessments. Appellees were not made parties to the suits in the State court, and the validity of the bonds was not there in issue, and upon this ground the district court held that the Michigan decisions did not bind the appellees in the instant cases. However, under the decision of the United States supreme court in Kersh LakeDrainage District v. Johnson, 309 U.S. 485 (60 Sup. Ct. 640,84 L.Ed. 881, 128 A.L.R. 386), announced *Page 571 
subsequent to the decision of the district court herein, those cases are res judicata as to the determinative facts of this controversy.'
"This court further finds and determines that the decision of the circuit court of appeals in the Federal Martin bond suit would have been the same irrespective of the decree of this court in September, 1932, determining the Martin drain proceedings void, and that the decision of the circuit court of appeals isres judicata of the claim of the plaintiff in this case irrespective of the said decree of this court.
"Order may, therefore, be entered granting defendants' motion to dismiss."
A careful review of the record and of the exhaustive briefs filed by counsel clearly indicates to us that the appellant makes the same claims in this court that it made in the court below and which are well stated in the opinion of the trial court above quoted. We think but little is to be added to what was there said. The authorities cited by the trial court, and others, amply justify his conclusion of law. See Royal Oak Drain District,Oakland County, Mich. v. Keefe (C.C.A.), 87 F.2d 786;Hansberry v. Lee, 311 U.S. 32 (61 Sup. Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741); Bloomfield Village Drain District v. Keefe
(C.C.A.), 119 F.2d 157.
The last cited case, to which the lower court referred in its opinion by volume and page numbers only, involved the same bond issue, the same defendants and identical facts.
We fail to find in the allegations of the bill of complaint in the instant case anything substantial to distinguish them from the allegations in the Keefe Case, supra, that would justify any different *Page 572 
conclusions of law than that reached by the United States circuit court of appeals for this circuit in said case.
Even if we were to hold that the lower court was in error in its reasons for the dismissal of the bill of complaint, which we do not, we would feel compelled to affirm the decree of dismissal by reason of the rule of stare decisis. We call attention to the case of City of Highland Park v. Oakland County DrainCommissioner, 300 Mich. 501, where we said:
"We do not say that Village of Oak Park v. Van Wagoner
(271 Mich. 450), is res judicata of the rights of these relator bondholders; nor do we hold that they had their day in court through representation by the drain commissioner who was the defendant in that action. We do say, however, that the rule ofstare decisis should be applied even though equitable considerations might prompt a different result. Detroit TrustCo. v. Detroit City Service Co., 262 Mich. 14, 35. See, also,People v. Droste, 160 Mich. 66, 75, and Colborne v.Railway, 177 Mich. 139, 142. Since we held in 1935 that it was illegal to levy and collect any tax assessed as a result of this project, under the doctrine of stare decisis we must hold now that it is illegal to levy and collect a tax to pay outstanding bonds issued incident to the same project."
We recognize the fact that this court has not heretofore had occasion to pass upon the validity of the bonds on this particular project. The only determination of invalidity of bonds of this issue by the court of last resort being BloomfieldVillage Drain District v. Keefe, supra. The United States supreme court refused certiorari therein. There have, however, been decrees and judgments entered in the circuit court of Macomb county declaring the *Page 573 
bond issue on this project invalid, from which no appeal was taken. Plaintiff's bill of complaint in the Federal case, attached as an exhibit to defendants' motion to dismiss, discloses this. Furthermore, this court has been called upon on occasions to pass judgment on almost identical bond issues on facts so nearly identical as here disclosed as to make them indistinguishable from those alleged in the instant case, and to compel the application of the doctrine of stare decisis. Some of these cases are: Clinton v. Spencer, 250 Mich. 135;Kinner v. Spencer, 257 Mich. 142; Meyering Land Co. v.Spencer, 273 Mich. 703; Detroit Fire Marine Ins. Co. v.County of Oakland, 284 Mich. 130.
Counsel for appellant contends:
"That class suits are of ancient origin and that they arose as a means of escape from an impossible situation. The legal principle which denied power to the court to administer or dispose of a fund or property without summoning all parties interested therein stood in the way of adjudicating rights with respect to such funds and property where the interested parties were very numerous and their interests and rights were subject to continuous change. The impossibility of bringing them all before the court and keeping the suit from being constantly abated by death or transfer of interests made it necessary to find some expedient to do practical justice, and at the same time to settle rights in respect to such property. Laws did not then exist as they do now, which enable the court to obtain service upon absentee owners of interests or unknown holders of interests by publication. Had such existed the necessity of adopting the expedient of a class suit would never have arisen. The difficulty was, therefore, solved by proceeding with the suit when the court ascertained that there were enough interested parties representing each *Page 574 
class of claimants to insure presentation to the court of all evidence and arguments which would tend to inform it of the disposition which should be made of the property.
"Although the necessity for class actions has now largely disappeared, because of the enactment of laws relating to a substituted service, the class action still persists as a recognized principle in equity procedure and is frequently resorted to. It was found useful in the two Michigan cases cited, (City of Detroit v. Railway, 226 Mich. 354; American StateSavings Bank, Trustee, v. American State Savings Bank,288 Mich. 78, cited by the trial court, and has frequently been found useful in dealing with insurance funds. * * *
"Suits which follow the pattern of the above cases have been aptly termed true class suits, and when it is found that the court had before it parties who could be said to truly represent the various interests, decrees rendered, determining how the fund or property should be administered or distributed, are binding upon all parties having an interest therein, although they were not actually parties to the litigation and may not even have known of its existence. It is noticeable that where such decrees have been declared to be binding upon absentees, they do no more than to fix and determine rights in property over which the court has jurisdiction. They neither impose nor discharge claims inpersonam."
Briefly stated, it is appellant's contention that the true class suit is essentially an action in rem; that the Federal court action and the decree rendered therein, which the trial court determined was res judicata to the rights of all bondholders, was in personam, and could only be binding on those of the bondholders who actively participated or were represented therein. *Page 575 
In effect, counsel for appellant concedes that if the Federal court case involving this same issue of bonds was an action inrem that the decree rendered therein is a bar to the rights of the plaintiff in the instant case.
It is apparent to us, by reference to the bill of complaint filed by plaintiffs in the Federal court suit involving this bond issue and the decree rendered therein, that it was the intent and purpose of said suit to place a lien upon the real estate of the taxpayers included within the assessment district of said Martin and Branches Drain District, and that appellees are correct in their contention that,
"It was not the intent that any personal judgment should be had against the taxpayers, or any of the defendants in the case. The bonds, if valid, could be paid only through assessments levied on the lands of the taxpayer. The assessment lien for payment of the bonds attached to the lands as soon as the tax was levied and the enforcement thereof must be equally for the benefit of all bondholders of the same class."
An action in rem is defined in 1 Am. Jur. p. 436, as follows:
"Speaking broadly any action for the determination of personal rights and obligations of defendants in the action is inpersonam, while a proceeding in rem is essentially a proceeding to determine the right in specific property against all the world, equally binding on everyone. It is a proceeding that takes no cognizance of the owner or person with a beneficial interest but is against the thing or property itself, directly, and has for its object the disposition of the property, without reference to the title of individual claimants. The action of the *Page 576 
court is binding, even in the absence of any personal notice to the party interested.
"Proceedings in rem include * * * suits for assessments." (Italics ours.)
The relief sought in the Federal court suit, and in the instant one, is a declaration of the validity of the bonds, a decree requiring an assessment of taxes and a tax levy on all lands in the assessment district, the enforcement of the lien created thereon against said lands, and a distribution of the funds made available through the enforcement of such lien to all the holders of bonds of said issue. We think the proceedings in both cases were in rem, and conclude that the Federal court suit was distinctively a class one.
We quote from what we said in our opinion in American StateSavings Bank, Trustee, v. American State Savings Bank,288 Mich. 78, because we feel that what we said is applicable here:
"There was no issue that could be raised by petitioner in such circumstances that would not affect all other depositors or holders of certificates in the same way. One certificate holder could not have greater rights as to his claim than another, and what would have been a defense or answer to the bill for one would have been the same for another. Their rights and defenses were identical. Petitioner was a member of the class represented by the named defendants. In City of Detroit v. Railway,226 Mich. 354, the class-suit doctrine was adopted by this court."
In view of our conclusion that the lower court's determination that the decree of the Federal court was res judicata of plaintiff's right to relief in the instant case, we do not deem it necessary to discuss in detail the issue as to whether the proceedings in these two cases are in personam or in rem. *Page 577 
The courts have, we find, uniformly held that actions to impress liens upon property and to enforce a tax lien against real estate are proceedings in rem. See Stewart v. Eaton,287 Mich. 466, 477 (120 A.L.R. 1354); Garden of Eden DrainDistrict v. Bartlett Trust Co., 330 Mo. 554 (50 S.W. [2d] 627, 84 A.L.R. 1078); Board of Directors of St. Francis LeveeDistrict v. Kurn (C.C.A.), 98 F.2d 394; Harris v. Cityof Sarasota, 132 Fla. 568 (181 So. 366); People, ex rel.Martin, v. Railway Co., 256 Ill. 432 (100 N.E. 207); Leigh
v. Green, 193 U.S. 79 (24 Sup. Ct. 390, 48 L.Ed. 623); 126 A.L.R. 664.
Decree affirmed, with costs to appellees.
BOYLES, C.J., and NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred with CHANDLER, J. SHARPE, J., concurred in the result.