671 N.W.2d 150 (2003)
258 Mich. App. 438
CITY OF DETROIT, Plaintiff-Appellee,
v.
19675 HASSE, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12251 Grandmont and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12210 Grandmont and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12136 Grandmont and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
8063 Mansfield and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
11335 Mansfield and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12055 Mansfield and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
11357 Rutherford and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
7734 Forrer and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12620 Sussex and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14302 Terry and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9337 Lauder and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
16223 Lauder and Alice Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
15461 Marlowe and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14820 Freeland, Bell Management Company, and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14008 Freeland, Oak Management Company, and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14028 Ardmore and Bell Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14304 Stansbury and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9194 Carlin and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
13949 Schaefer and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
11415 Sorrento and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
21460 Thatcher and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
16951 Chicago and T & R Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9387 Manor and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
11365 Manor and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
10010 Pinehurst and T & R Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
13940 Washburn and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
13561 Cloverlawn and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9353 Yellowstone and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12082 Yellowstone, Joy Management Company, and Alice Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9724 Otsego and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
19431 Lamont and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
13480 Newbern and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12762 Terry, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
20625 Lyndon, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
18535 Plainview, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
10840 West Outer Drive, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
18910 Braile and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
19448 Lyndon and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
18900 Patton and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9003 Vaughan, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
18280 Vaughan and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
18922 Annchester, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14232 Grandville, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
19953 Ashton and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
7737 Archdale, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9636 Archdale, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
11407 Longacre and Frank Matthews, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
12150 Rutland, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9391 Memorial, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9994 Memorial and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
20500 Ferguson, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
8932 Metetal, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
8901 St Marys, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9213 Montrose, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
15016 Prest, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9414 Sussex and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
16230 Coyle and Oak Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14261 Terry, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14400 Lauder, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14528 Hubbell, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
8321 Strathmoor and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
14609 Mark Twain and Joy Management Company, Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
13545 Appoline, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9379 Meyers, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
16925 Tireman, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
9317 Manor, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
8510 Roselawn and Tamarac Properties, Inc., Defendants, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
10011 Morley, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
19361 Runyon, Defendant, and
Acorn Investment Company, Defendant-Appellant.
City of Detroit, Plaintiff-Appellee,
v.
20226 Pinehurst, Defendant, and
Acorn Investment Company, Defendant-Appellant.
Docket Nos. 237995, 238269-238338.
Court of Appeals of Michigan.
Submitted September 10, 2003, at Detroit.
Decided September 16, 2003, at 9:05 a.m.
Released for Publication November 10, 2003.
*157 Ruth Carter, Corporation Counsel, and Joanne D. Stafford, Supervising Assistant Corporation Counsel, Detroit, for the city of Detroit.
Veleta P. Brooks-Burkett, Detroit, for the defendants.
Before: WHITBECK, C.J., and TALBOT and ZAHRA, JJ. *151 *152 *153 *154 *155
*156 PER CURIAM.
In these seventy-one consolidated appeals, we decide whether a statute of limitations bars plaintiff city of Detroit's actions to foreclose tax liens on several parcels of real property owned by defendant Acorn Investment Company[1] for unpaid tax bills dating back as far as 1989. Because statutes of limitations do not run against the state or its subdivisions without an express legislative enactment, and because the Legislature has not enacted a statute of limitations for in rem foreclosure actions, we hold that no statute of limitations barred the city's actions. We also conclude that the city was authorized to impose a late penalty fee because the ordinance empowering it to do so was enacted after December 31, 1982, as required by M.C.L. § 211.44(7). Accordingly, we affirm the trial court's seventy-one foreclosure judgments and the trial court's grant of summary disposition with respect to the penalty fees.

I. Basic Facts And Procedural History

A. The City's First Series Of Complaints
In May 2001, the city filed thirty-nine nearly identical complaints, each containing one count entitled "Real Property Tax Foreclosure." The complaints described each of the involved parcels of real property, alleged that none of the various entities with ownership interests had paid general real estate taxes that the city levied on the properties, and averred that more than two years had passed since the city purchased "at the annual tax sale" "the unpaid tax liens of the City of Detroit for years prior to 1998." The city attached to each of the complaints tax bills showing unpaid taxes for each property, most dating back to 1991 or 1990, and one property having unpaid taxes as far back as 1989. According to the city, the unpaid amounts now included interest, penalties, and court costs. The city requested that, 120 days after the filing date of the complaints, the trial court enter judgments of foreclosure with respect to the pre-1998 tax liens on the involved parcels pursuant to § 8-403 of the 1997 Detroit Charter, and "order the vesting in [the city] the absolute title in fee... in the subject propert[ies]" unless defendants paid the amounts of the judgments within sixty days after entry of the *158 judgments. The city also sought possession of the premises.

B. The City's Second Series Of Complaints
In June 2001, the city filed separate complaints with respect to thirty-two additional parcels of real property, each containing two counts. The first count, entitled "Real Property Tax Foreclosure," which consisted of allegations mirroring those within the sole count of the May 2001 complaints, sought a judgment of foreclosure of pre-1998 tax liens and possession of the involved parcels. Count II requested that the trial court impose on the owners of the involved properties personal liability for the delinquent real property taxes, pursuant to M.C.L. § 211.47 and Detroit Charter, § 8-403(2). The city again attached as an exhibit to each complaint the relevant real property tax bill showing unpaid city taxes, in some cases dating back to 1989. In September 2001, the trial court consolidated all the city's seventy-one actions.

C. Acorn's Motion And The City's Response
Shortly before the consolidation occurred, Acorn filed a "Motion for summary disposition and declaratory judgment, in part," pursuant to MCR 2.116(C)(10). While Acorn did not dispute the amounts of delinquent property taxes or the city's "ability to foreclose on real property in a suit to collect delinquent real property taxes," Acorn argued that a six-year period of limitations precluded the city from obtaining a judgment of foreclosure on liens for unpaid taxes that became due more than six years before the city filed its complaints. Acorn noted that Michigan case law had applied a six-year period of limitations to in personam actions to collect unpaid property taxes pursuant to M.C.L. § 211.40 and Detroit Charter § 8-403. Acorn acknowledged that there was no clear period of limitations for actions to foreclose on a real property tax lien, but theorized that the six-year limitations period applicable to otherwise unspecified personal actions, M.C.L. § 600.5813, also governed foreclosure actions because (1) "[t]he gravamen of the instant complaint is the collection of `taxes,' which according to the City charter, is a personal debt of the owner of the property," and (2) in Detroit, foreclosure represented merely an alternate and concurrent remedy to an in personam suit, and Michigan case law explained that one could not avoid a period of limitations applicable to a remedy at law by pursuing a substitute equitable remedy. Acorn also contested the city's ability to impose and collect penalties on the unpaid taxes. The city responded to Acorn's motion for summary disposition by requesting judgments or declaratory relief in its favor pursuant to MCR 2.116(I)(1), 2.116(I)(2), and 2.605.

D. The Trial Court's First Ruling
At an August 2001 hearing, after the parties summarized their briefs addressing the propriety of summary disposition, the trial court ruled:
With regard to the Statute of Limitations, a judge is, in my view of what the role of a judge is, is certainly not that of a Legislature.
The judge does not have the opportunity to create the Statute of Limitations where the Legislature has either failed to do so, or has chosen not to do so, and that is the case here.
211.40, I believe I'm correct, indicates that the lien referred to for those amounts and for all interest and charges on those amounts shall continue until paid.
The [L]egislature has not, in this in rem proceeding, created a Statute of Limitations. Thus, it does not apply. There is none in this instance.
*159 With regard to penalty ... if I can find the ordinance reference.

* * *
593-H did recodify, or codified the ordinances of the City of Detroit, and provided when said ordinances would become effective, and it was passed in 1984, effective January 1, 1985.
It is clear to this Court that that ordinance was passed after the date required in the statute, which is M.C.L. § 211.44, paren (7), and prior to any of the taxes, which are the subject of this case.
With regard to costs, attorney fees, all that's premature at the point. So the Court ... will not rule on that.
And other than costs and attorney fees, there really is nothing left in this case except for, as requested by [plaintiff's counsel], I'm going to grant his motion for, in effect, a declaratory judgment in his favor....
Shortly thereafter, the trial court entered an order of declaratory judgment that incorporated its oral rulings.[2]

E. The City's Motion For Summary Disposition And The Trial Court's Second Ruling
In October 2001, the city filed a motion for summary disposition requesting that the trial court enter judgments of tax foreclosure in each of the cases because the 120-day statutory waiting period had expired and the delinquent taxes remained unpaid. The motion also requested that the trial court award the city $350 in attorney fees and court costs "for each case to reimburse the City of Detroit in the event of redemption."
In early November 2001, the trial court held a hearing devoted, in part, to the city's motion for summary disposition. The city requested entry of seventy-one foreclosure judgments, described various costs common to each action for which it sought reimbursement in the event Acorn redeemed its properties, and attempted to distinguish the case on which Acorn relied for the proposition that a six-year period of limitations applied in the instant cases. Acorn challenged some of the city's asserted costs, and again set forth its positions that a six-year period of limitations applied to the collection of a personal debt consisting of real property taxes, and that no valid city ordinance authorized delinquent tax penalties.
The trial court declined to hold oral argument on the basis that the motion presented the same issues the trial court had previously addressed. The trial court then awarded the city $350 in costs in each case, payable in the event that Acorn exercised its rights of redemption. On November 19, 2001, the trial court entered seventy-one judgments of foreclosure and on November 21, 2001, the trial court entered an "Order Granting Motion for Summary DispositionConsolidated Tax Foreclosure Judgments." Sixty-eight of the court files contain a satisfaction of judgment filed on January 15, 2002, reflecting Acorn's payment of the entire amounts of delinquent taxes and penalties.

II. The Statute Of Limitations

A. Standard Of Review
Whether a period of limitations applies to preclude a party's pursuit of an action constitutes a question of law that we *160 review de novo.[3] Similarly, we review de novo questions of statutory interpretation[4] and the propriety of the circuit court's summary disposition ruling.[5]

B. The Sovereign Shield
It is a long-established principle of Michigan jurisprudence that periods of limitations do not operate against the state in the absence of a statute otherwise expressly so providing.[6] The United States Supreme Court long ago explained the concept of the sovereign shield from periods of limitations:
The rule quod nullum tempus occurrit regithat the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitationsappears to be a vestigial survival of the prerogative of the Crown. But whether or not that alone accounts for its origin, the source of its continuing vitality where the royal privilege no longer exists is to be found in the public policy now underlying the rule even though it may in the beginning have had a different policy basis. "The true reason... is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers. And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments."... So complete has been its acceptance that the implied immunity of the domestic "sovereign," state or national, has been universally deemed to be an exception to local statutes of limitations where the government, state or national, is not expressly included.... [[7]]
Thus, at common law, "`the sovereign was exempt from the operation of statutes of limitation and remains exempt to this day in the absence of statutory authority.'"[8]

C. Piercing The Sovereign Shield
The question, then, is whether any Michigan statute expressly pierces the state's common-law shield against periods of limitations. Acorn concedes that no existing statute explicitly prescribes a period of limitations in which the state or its agencies must file real property tax foreclosure actions. Only one section of Chapter 58 of the Revised Judicature Act,[9] which establishes various periods of limitations for judicial actions brought in Michigan courts, explicitly addresses the applicability of limitations periods to the state. That section, M.C.L. § 600.5821, provides:

*161 (1) Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land.[[10]]
(2) Actions brought by any municipal corporations for the recovery of the possession of any public highway, street, alley, or any other public ground are not subject to the periods of limitations.
(3) The periods of limitations prescribed for personal actions apply equally to personal actions brought in the name of the people of this state, or in the name of any officer, or otherwise for the benefit of this state, subject to the exceptions contained in subsection (4).
(4) Actions brought in the name of the state of Michigan, the people of the state of Michigan, or any political subdivision of the state of Michigan, or in the name of any officer or otherwise for the benefit of the state of Michigan or any political subdivision of the state of Michigan for the recovery of the cost of maintenance, care, and treatment of persons in hospitals, homes, schools, and other state institutions are not subject to the statute of limitations and may be brought at any time without limitation, the provisions of any statute notwithstanding.

D. Personal Actions
Acorn insists that M.C.L. § 600.5821(3), which extends the statutory limitations on personal actions[11] to the state, applies to bar the city's actions.[12] This contention rests upon Acorn's characterization of the city's real estate property tax foreclosure actions as personal actions. But the characterization betrays a misunderstanding of the distinction between personal actions, or actions in personam, and actions in rem.
Black's Law Dictionary defines an action in personam as one that
seeks to enforce an obligation imposed on the defendant by his contract or delict; that is, it is the contention that he is bound to transfer some dominion or to perform some service or to repair some loss. In common law, an action brought for the recovery of some debt or for damages for some personal injury, in contradistinction to the old real actions, which related to real property only.[[13]]
In contrast, the term action in rem signifies [a]n action determining the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property.[14] Stated another way:
[A]ctions in personam differ from actions in rem in that actions or proceedings in personam are directed against a *162 specific person, and seek the recovery of a personal judgment, while actions or proceedings in rem are directed against the thing or property itself, the object of which is to subject it directly to the power of the state, to establish the status or condition thereof, or determine its disposition, and procure a judgment which shall be binding and conclusive against the world. The distinguishing characteristics of an action in rem is [sic] its local rather than transitory nature, and its power to adjudicate the rights of all persons in the thing.[[15]]
Here, the counts in the city's complaint that are at issue plainly reflect that the city pursued real estate tax foreclosure actions with respect to each parcel and has named each parcel as a defendant.[16] Michigan courts consistently have characterized such actions as actions in rem.[17]
Acorn nonetheless argues that in personam and in rem actions are subcategories of the broader category of personal actions, citing the following italicized language in support:
Personal actions are those brought for the recovery of personal property, for the enforcement of a contract or to recover for its breach, or for the recovery of damages for an injury to the person or property. Personal actions are, as to form, either ex contractu or ex delicto; as to place tried, local or transitory; and as to object, in personam or in rem.[[18]]
Initially, we note that actions brought for the recovery of real property are absent from this description of personal actions. Moreover, it appears that the author of the article employed the adjective "personal" in the second sentence before listing the various forms of action in an effort to distinguish these forms of action from the common-law "real actions" discussed within the immediately preceding paragraph.[19] *163 The definition of "in rem" in Black's Law Dictionary (6th ed.), p. 793, makes it clear that actions in rem are entirely distinct from personal actions:
A technical term used to designate proceedings or actions instituted against the thing, in contradistinction to personal actions, which are said to be in personam.

"In rem" proceedings encompass any action brought against person in which essential purpose of suit is to determine title to or to affect interests in specific property located within territory over which court has jurisdiction. It is true that, in a strict sense, a proceeding in rem is one taken directly against property, and has for its object the disposition of property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. In the strict sense of the term, a proceeding "in rem" is one which is taken directly against property or one which is brought to enforce a right in the thing itself. [Some emphasis added; citations omitted.]
Citing Detroit v. Walker,[20] among other authorities, Acorn argues that because real estate taxes constitute personal obligations of the taxpayer, any action premised on the tax debt constitutes a personal action. However, the Walker Court stated that the statutory provision permitting in personam actions to collect city property taxes implemented an additional enforcement mechanism,[21] not the exclusive one. In other words, while it is true that the city could have pursued a personal action to recover Acorn's debts, it chose instead to proceed in rem by foreclosing, which it was also authorized to do.[22] It is plain that when, as here, a municipality opts to pursue only in rem actions to foreclose the liens on real property, these actions are not somehow rendered personal actions simply because the municipality might have pursued a money judgment against the property owner in lieu of an in rem action. Similarly, there is no merit to Acorn's suggestion that its determination to satisfy its personal obligations of delinquent property taxes after the city obtained its judgments of foreclosure transformed the nature of the city's in rem proceeding into a personal action.
Nevertheless, Acorn urges this Court to apply the statutory limitation on personal actions on the principle that a party may not seek an equitable remedy to avoid a statutory limitation attendant to the analogous legal remedy. However, Acorn offers no authority for the proposition that this principle may be applied to a political subdivision of the state in contravention of the sovereign shield doctrine, and we have found none. Accordingly, we reject this argument.
In sum, because the only claims at issue here seek foreclosure rather than damages, we conclude that these appeals involve in rem actions and not personal actions. Therefore, given the lack of a statute of limitations on in rem actions by *164 the state or the city, its subdivision, we conclude that the trial court correctly declined to find the city's actions timebarred and properly granted the city summary disposition with respect to this claim as a matter of law.

III. The Penalty Provision

A. Standard Of Review
We review de novo issues of statutory interpretation,[23] as well as the legal question whether the city properly enacted an ordinance authorizing the imposition of penalties for delinquent real property taxes.[24]

B. The City's Ordinances
The city was initially authorized to assess late penalty charges for delinquent property taxes by § 21-7-43 of the Detroit Municipal Code of 1964. However, in 1982, the Legislature enacted a provision that prohibited local tax collecting treasurers from imposing late penalty charges unless the collecting unit's governing body approved a resolution or ordinance after December 31, 1982, that allowed them to do so. That provision reads in pertinent part:
The local property tax collecting treasurer shall not impose a property tax administration fee, collection fee, or any type of late penalty charge authorized by law or charter unless the governing body of the local property tax collecting unit approves, by resolution or ordinance adopted after December 31, 1982, an authorization for the imposition of a property tax administration fee, collection fee, or any type of late penalty charge provided for by this section or by charter, which authorization shall be valid for all levies that become a lien after the resolution or ordinance is adopted.[[25]]
On August 1, 1984, the Detroit City Council passed Ordinance No. 593-H, which adopted a municipal code for the city of Detroit that included the ordinances in the 1964 Detroit Municipal Code, and gave them immediate force and effect. Included within the municipal code that the city adopted through the enactment of Ordinance No. 593-H was § 18-9-95, which provided:
No addition for penalty shall be made to general city taxes levied on real and personal property paid on or before the thirty-first day of August. A penalty in the amount of one per cent of every unpaid tax shall be added thereto on September first and an additional one per cent of such tax shall be added on the first day of each succeeding month, until such tax is paid in full, not to exceed a total penalty of twenty-five (25) per cent of the unpaid tax.
This ordinance was formerly § 21-7-43 of the Detroit Municipal Code of 1964, which Ordinance 593-H adopted by reference.
Acorn maintains, without citation of authority, that M.C.L. § 211.44(7) operated to repeal the 1964 ordinance that authorized real estate tax penalties, and that the 1984 adoption of this ordinance from the 1964 code was therefore ineffective. We disagree. A statute can preempt a municipal ordinance if the statute "completely occupies the field that ordinance attempts to regulate" or if the ordinance "directly conflicts with a state statute."[26] *165 MCL 211.44(7) does not occupy the field, but explicitly contemplates that local units may assess late penalties.
Further, the provision does not directly conflict with or "repeal" the ordinance, as Acorn suggests. An examination of the statutory language reveals that M.C.L. § 211.44(7) does not prohibit a city from enacting an ordinance assessing late fees for taxes, but only prohibits the treasurer from imposing such feeseven if authorized by charterunless the city government approved an ordinance authorizing the fees after the statute became effective on December 31, 1982. Therefore, there was no direct conflict between the statute and the ordinance. Accordingly, the city's incorporation by reference of the former § 21-7-43 constituted a valid enactment. This method of codification is explicitly authorized by M.C.L. § 117.5b, which provides:
Each city shall have power, whether provided in its charter or not, to codify, recodify and continue in code its municipal ordinances, in whole or in part, without the necessity of publishing the entire code in full. The ordinance adopting the code, as well as subsequent ordinances repealing, amending, continuing or adding to the code, shall be published as required by law. The ordinance adopting the code may amend, repeal, revise or rearrange ordinances or parts of ordinances by reference by title only.
Because the city validly enacted an ordinance after December 31, 1982, that authorized the imposition of a penalty fee on delinquent property taxes, we conclude that the trial court properly granted summary disposition to the city with respect to this issue.
Affirmed.
WILLIAM C. WHITBECK, Chief Judge, and MICHAEL J. TALBOT, and BRIAN K. ZAHRA, Judges.
NOTES
[1] The city identified in its complaints several other entities that allegedly had ownership interests in the tax delinquent properties. Because only Acorn Investment Company appealed to this Court, we refer only to that entity in this opinion.
[2] On September 17, 2001, Acorn filed in this Court a claim of appeal from the circuit court's order of declaratory judgment. The appeal, entitled Detroit v. 13545 Appoline, Docket No. 236817, was dismissed on November 2, 2001, apparently for lack of jurisdiction because the August order did not constitute a final judgment.
[3] Collins v. Comerica Bank, 468 Mich. 628, 631, 664 N.W.2d 713 (2003).
[4] Oakland Co. Bd. of Co. Rd. Comm'rs v. Michigan Prop & Cas. Guaranty Ass'n, 456 Mich. 590, 610, 575 N.W.2d 751 (1998).
[5] Maiden v. Rozwood, 461 Mich. 109, 118, 597 N.W.2d 817 (1999).
[6] Crane v. Reeder, 21 Mich. 24, 44 (1870).
[7] Guaranty Trust Co. v. United States, 304 U.S. 126, 132-133, 58 S.Ct. 785, 82 L.Ed. 1224 (1938), quoting United States v. Hoar, 26 F.Cas. 329, 330 (D.Mass., 1821) (citations omitted).
[8] Regents of the Univ. of Michigan v. State Farm Mut. Ins. Co., 250 Mich.App. 719, 733, 650 N.W.2d 129 (2002), quoting In re Konke Estate, 98 Mich.App. 249, 252, 296 N.W.2d 226 (1980); see also Maillat v. Village of Marcellus, 329 Mich. 370, 374, 45 N.W.2d 325 (opinion by Dethmers, J.), 376 (concurring opinion by North, J.); 329 Mich. 370, 45 N.W.2d 325 (1951); Gorte v. Dep't of Transportation, 202 Mich.App. 161, 165, 507 N.W.2d 797 (1993); 54 CJS, Limitation of Actions, § 17, pp. 41-42.
[9] MCL 600.5801 et seq.
[10] Neither party argues the applicability of M.C.L. § 600.5821(1) to this case.
[11] MCL 600.5813 provides that the general limitations period for personal actions is six years.
[12] The city falls within the scope of the state's protection against periods of limitations. The Supreme Court has stated in the context of an action to foreclose real property tax liens, "In exercising a power delegated to it by the State, the city of Detroit, under its charter provisions, acted as an agency of the State." Detroit v. O'Connor, 302 Mich. 531, 533, 5 N.W.2d 453 (1942).
[13] Black's Law Dictionary (6th ed.), p. 29. See also Attorney General v. Harkins, 257 Mich.App. 564, 570, 669 N.W.2d 296 (2003);, quoting Black's Law Dictionary, supra.
[14] Black's Law Dictionary (7th ed.), p. 30.
[15] 1A CJS, Actions, 69, pp. 463-464.
[16] Our review of the trial court files in these cases revealed no order disposing of the second counts (seeking personal judgments of money damages against the property owners for the amounts of delinquent property taxes) in the thirty-two complaints filed on June 12, 2001. We need not consider the counts for money damages because (1) the city indicates in its brief on appeal that it voluntarily "dropped its in personam count in each of the 32 actions ... and the judgment in each case was solely for foreclosure of the lien," and (2) Acorn agrees that the city's "final remedies were judgments of foreclosure in all the cases."
[17] O'Connor, supra at 535, 5 N.W.2d 453; Smith v. Cliffs on the Bay Condo. Ass'n (On Remand), 245 Mich.App. 73, 75, 626 N.W.2d 905 (2001). See also Continental Motors Corp. v. Muskegon Twp., 376 Mich. 170, 180, 135 N.W.2d 908 (1965) ("A basic distinction between an ad valorem property tax and an excise tax is that the former is regarded as primarily in rem in nature while the latter is regarded as in personam in nature."); Int'l Typographical Union v. Macomb Co., 306 Mich. 562, 575-577, 11 N.W.2d 242 (1943) (quoting 1 Am. Jur., p. 436, for the definition of an "action in rem," and concluding, "The courts have, we find, uniformly held that actions to impress liens upon property and to enforce a tax lien against real estate are proceedings in rem."); Thompson v. Auditor General, 261 Mich. 624, 652, 247 N.W. 360 (1933) ("Under the tax law the State acquires a lien against the real estate assessed and before such land may be sold, such lien must be foreclosed and sale ordered by the court. Such foreclosure is a proceeding in rem, against the land itself...."); Keweenaw Bay Outfitters & Trading Post v. Dep't of Treasury, 252 Mich.App. 95, 101, 651 N.W.2d 138 (2002) ("In Michigan, in rem proceedings include foreclosures for failure to pay taxes....").
[18] 1 Am. Jur. 2d, Actions, § 32, p. 744 (emphasis added).
[19] See 1A CJS, Actions, § 4, p. 313 ("Ordinarily, the term `personal action' is used in contradistinction to the terms `real action' and `mixed action.'").
[20] Detroit v. Walker, 445 Mich. 682, 700 n. 24, 520 N.W.2d 135 (1994).
[21] Id. at 704, 520 N.W.2d 135.
[22] See M.C.L. § 211.40 and Detroit Charter, 8-403 (providing that assessed taxes are both a personal debt of the owner and a lien on the property).
[23] Attorney General v. Pub. Service Comm., 249 Mich.App. 424, 429, 642 N.W.2d 691 (2002).
[24] State Treasurer v. Abbott, 468 Mich. 143, 148, 660 N.W.2d 714 (2003).
[25] MCL 211.44(7).
[26] Rental Prop Owners Ass'n of Kent Co. v. Grand Rapids, 455 Mich. 246, 257, 566 N.W.2d 514 (1997).