GREAT LAKES PLUMBING & HEATING OF NORTHERN
MICHIGAN, INC v WDLS, INC

Docket No. 240970. Submitted November 5, 2003, at Lansing. Decided
February 17, 2004, at 9:00 A.M. Leave to appeal sought.

Great Lakes Plumbing & Heating of Northern Michigan, Inc., and
James P. and Kim E. Musselman brought an action in the Cheboy-
gan Circuit Court against WDLS, Inc., seeking consequential dam-
ages resulting from the defendant's failure to comply with MCL
421.15(g) of the Michigan Employment Security Act. MCL
421.15(g), among other things, makes a person or employing unit
that acquires the organization, trade, business, or seventy-five per-
cent or more of the assets of an employing unit liable for unem-
ployment taxes due from the transferor at the time of the acquisi-
tion, and requires the real estate broker or other agent of the trans-
feror to disclose to the transferee at least two days before the
acceptance of an acquisition offer the transferor's outstanding
unemployment tax liability. In this case, Glen and Nancy Proctor,
as owners of Proctor's Heating and Air Conditioning, had agreed to
engage the defendant as their agent in the sale of their business
and business-related realty. The agreement was later modified to
encompass only the realty. Great Lakes, through its officers, James
and Kim Musselman, made an offer to buy the Proctors' business
and realty. The offer was later modified to provide that the Mus-
selmans would buy the realty in their individual capacities while
Great Lakes would buy the Proctors' business. The defendant,
which never disclosed to Great Lakes or the Musselmans the out-
standing unemployment tax liability of Proctor's Heating and Air
Conditioning, facilitated the transactions after a disclosure form
stating that the defendant was not an agent of any of the transact-
ing parties was signed by the defendant's owner and the parties to
the transactions. The Michigan Employment Security Commission
thereafter made a determination that Great Lakes Plumbing &
Heating, as successor of Proctor's Heating and Air Conditioning,
was liable for Proctor's outstanding unemployment tax obligation,
prompting the plaintiffs to file their action. The court, Scott L. Pav-
lich, J., granted summary disposition for the defendant. The plain-
tiffs appealed.

The Court of Appeals *held*:

The trial court correctly concluded that the Musselmans cannot recover consequential damages under the statute, but erred in finding that the defendant did not owe a duty under the statute to disclose the outstanding unemployment tax liability to Great Lakes.

1. The defendant, whose owner was aware of the outstanding unemployment tax liability of Proctor's Heating and Air Conditioning at the time Great Lakes made its offer, was under a duty under the statute to disclose that liability to Great Lakes. It is irrelevant that the defendant was no longer the transferor's agent by the time the transactions were completed, because the duty arose before an offer could be accepted by the transferor.

2. The trial court erred in concluding that the defendant owed no duty to disclose because the defendant's representation was limited to the real estate and the real estate constituted less than seventy-five percent of the transferred assets. Representation of the transferor triggers the agent's duty to disclose, while the statute's reference to seventy-five percent or more of the assets pertains to the determination whether the purchasing entity faces liability as a successor employer.

3. The trial court correctly concluded that the Musselmans are not entitled to damages under the statute. The Musselmans are not transferees for purposes of the statute because they personally did not acquire seventy-five percent or more of the transferred assets.

4. The defendant's good faith misunderstanding of its disclosure obligation under the statute cannot excuse it of liability to Great Lakes for consequential damages. Although the statute provides that the transferor's agent is not liable if the agent exercised good faith in compliance with the disclosure of information, the defendant made no effort whatsoever to disclose the tax liability and therefore cannot be excused from liability for damages.

Affirmed in part, reversed in part, and remanded for further proceedings.

UNEMPLOYMENT COMPENSATION — SUCCESSOR EMPLOYERS — DISCLOSURE OF OUT-STANDING UNEMPLOYMENT TAX LIABILITIES — AGENTS.

An agent of an employer transferring its organization, trade, business, or seventy-five percent or more of its assets to a person or other employer must disclose to the transferee before the offer of acquisition is accepted the amount of the transferor's outstanding unemployment tax liability; failure to disclose subjects the agent to liability to the transferee for consequential damages suffered as a result of being deemed liable for the transferor's unemployment tax liability as the successor of the transferor; the disclosure obligation

arises before the offer is accepted, and the fact that the agent is no longer an agent of the transferor when the transfer occurs does not excuse the agent from liability to the transferee (MCL 421.15[g]).

*Patrick & Kwiatkowski, PLLC* (by *Aaron J. Gauthier*), for the plaintiffs.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for the defendant.

Before: O'CONNELL, P.J., and JANSEN and WILDER, JJ.

WILDER, J. Plaintiffs, Great Lakes Plumbing & Heating of Northern Michigan, Inc., James P. Musselman, and Kim E. Musselman, appeal as of right the trial court's grant of summary disposition to defendant, WDLS, Inc., pursuant to MCR 2.116(C)(10).[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On March 12, 1999, Glen and Nancy Proctor, who had been doing business as Proctor's Heating and Air Conditioning, entered into an exclusive listing agreement with defendant, whereby the Proctors granted defendant the exclusive right to sell the listed property, which included their business, inventory, and real property. On December 11, 1999, the Proctors and defendant modified the listing agreement to

---

[1] Defendant requested summary disposition based on MCR 2.116(C)(8) and (C)(10). Although the trial court's order does not indicate which sub-rule formed the basis for its ruling, the trial court relied on documentary evidence beyond the pleadings. Because a motion for summary disposition pursuant to MCR 2.116(C)(8) tests the claim by examining the pleadings alone, *McManamon v Redford Charter Twp*, 256 Mich App 603, 610; 671 NW2d 56 (2003), it is clear that the trial court based its ruling on MCR 2.116(C)(10).

encompass only the real property, at a price of $289,000.

On February 2, 2000, plaintiff Great Lakes Plumbing & Heating of Northern Michigan, Inc. (Great Lakes), through plaintiffs James Musselman and Kim Musselman, its president and secretary, respectively, signed a document titled "PURCHASE AGREEMENT" that reads as follows: "Selling price of $324,900 with non-refundable deposit of $10,000.00 applied to price at closing. Land contract or bank financing will be determined by interest rate available. The agreed upon interest rate of land contract is 10%."

Deposition testimony established that the above-referenced language constituted an agreement by the plaintiffs to purchase the Proctors' land and business assets for $324,900. However, it is disputed whether defendant had any involvement in the negotiation and execution of this agreement. Plaintiff James Musselman testified that he contacted Wayne Stahl, defendant's owner, concerning the property before executing the purchase agreement and that Glen Proctor had a telephone conversation with Stahl in Musselman's presence before signing the agreement. Separate bills of sale were prepared by Proctor for the inventory, equipment, tools, and good will of Proctor's Heating and Air Conditioning.

Pursuant to the advice of their accountant, the Musselmans decided to alter the terms of the offer so that they would purchase the real property in their individual capacities, while Great Lakes would purchase the inventory, good will, and equipment of the business, as well as Proctor's covenant not to compete with Great Lakes. During subsequent discussions with Glen Proctor regarding this new transac-

tion, Stahl agreed to serve as a transaction coordinator for the closing on the real estate transaction. Defendant drafted a sales contract for the sale of the real property for $144,900, which the parties signed on February 21, 2000. Defendant also prepared an agency disclosure form, signed by the Musselmans and the Proctors on February 21, 2000, that indicated that Stahl would serve as a transaction coordinator for the real estate transaction, but that he was not an agent of either party. The agreed to transactions closed on February 28, 2000, at defendant's office. After the closing, the Musselmans leased the real property to Great Lakes.

Approximately one year later, the Michigan Employment Security Commission (MESC) made a final determination that Great Lakes is a successor employer of Proctor's Heating and Air Conditioning pursuant to MCL 421.41(2)(a). MCL 421.41(2)(a) defines "employer" as "[a]ny individual, legal entity, or employing unit which acquired the organization, trade, or business, or 75% or more of assets thereof, of another which at the time of the acquisition was an employer subject to this act." The hearing officer determined that the Musselmans' lease of the real property to Great Lakes was a so-called "straw man" transaction and that Great Lakes therefore had acquired all of Proctor's assets. As a successor employer, Great Lakes received Proctor's rating account tax rate and, pursuant to MCL 421.15(g), became liable for Proctor's delinquent unemployment contributions, which totaled more than $30,000. Thereafter, in April 2001, plaintiffs sued defendant alleging that defendant failed to disclose the existence of this unemployment tax liability as required

by MCL 421.15(g).[2] Plaintiffs seek the recovery of damages incurred as a result of defendant's failure to make the required disclosure.

Defendant subsequently moved for summary disposition, arguing that it owed no duties to Great Lakes under MCL 421.15(g) and that the Musselmans did not suffer consequential damages because only Great Lakes incurred successor liability for the delinquent unemployment contributions. In its motion, defendant stated:

> Assuming for purposes of this motion only, that Defendant Re-Max was acting in the capacity of real estate broker or agent for Glen and Nancy Proctor in the sale of the real estate, it is conceded that Defendant had a duty under

---

[2] MCL 421.15(g) provides, in pertinent part:

A person or employing unit, that acquires the organization, trade, business, or 75% or more of the assets from an employing unit, as a successor defined in section 41(2), is liable for contributions and interest due to the commission from the transferor at the time of the acquisition. . . . At least 2 calendar days not including a Saturday, Sunday, or legal holiday before the acceptance of an offer, the transferor, or the transferor's real estate broker or other agent representing the transferor, shall disclose to the transferee . . . the amounts of the transferor's outstanding unemployment tax liability, unreported unemployment tax liability, and the tax payments, tax rates, and cumulative benefit charges for the most recent 5 years, a listing of all individuals currently employed by the transferor, and a listing of all employees separated from employment with the transferor in the most recent 12 months. . . . Failure of the transferor, or the transferor's real estate broker or other agent representing the transferor, to provide accurate information required by this subsection is a misdemeanor punishable by imprisonment for not more than 90 days, or a fine of not more than $2,500.00, or both. In addition, the transferor, or the transferor's real estate broker or other agent representing the transferor, is liable to the transferee for any consequential damages resulting from the failure to comply with this subsection. However, the real estate broker or other agent is not liable for consequential damages if he or she exercised good faith in compliance with the disclosure of information.

MESA to disclose the Proctors' unemployment tax informa-
tion to James and Kim Musselman *only* . . . . For purposes
of this motion, it is also conceded that Defendant failed to
disclose to James and Kim Musselman, the Proctors' unem-
ployment tax information as it was required to do under the
Act. [Emphasis added.]

The trial court granted defendant's motion. In its writ-
ten opinion, the trial court determined that because
defendant's representation was limited to the real
estate and the real estate constituted less than sev-
enty-five percent of the transaction, the statute did
not impose on defendant a duty of disclosure. The
trial court also concluded that, in any event, because
the liability for the unemployment tax was levied
against Great Lakes and not against the Musselmans,
the Musselmans are not transferees under the statute
and, therefore, are ineligible to make a claim for dam-
ages. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

This Court reviews de novo decisions concerning
motions for summary disposition, as well as the inter-
pretation of statutes. *Detroit v 19675 Hasse*, 258
Mich App 438, 444; 671 NW2d 150 (2003). A motion
for summary disposition based on MCR 2.116(C)(10)
tests the factual support for a claim to determine
whether, except as to the amount of damages, any
genuine issues of material fact exist for trial. *Lewis v
LeGrow*, 258 Mich App 175, 192; 670 NW2d 675
(2003). "When deciding a motion for summary dispo-
sition [based on this subrule], a court must consider
the pleadings, affidavits, depositions, admissions, and
other documentary evidence submitted in a light most
favorable to the nonmoving party." *Id.*, citing *Ritchie-*

*Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

When interpreting statutes, our primary goal is to effect the intent of the Legislature. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), citing *People v Wager*, 460 Mich 118, 123 n 7; 594 NW2d 487 (1999). We accomplish this goal by first examining the statutory language. *Roberts, supra* at 63, citing *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). If the language is clear and unambiguous, we enforce the statute as written. *Roberts, supra* at 63, citing *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). We will read nothing into a clear and unambiguous statute that is not within the manifest intent of the Legislature as expressed in the words of the statute. *Roberts, supra* at 63, citing *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

### III. ANALYSIS

We find that the trial court correctly concluded that the Musselmans cannot recover consequential damages under the statute, but erred in finding that defendant did not owe a duty under the statute to disclose the outstanding unemployment tax liability to Great Lakes.

MCL 421.15(g) imposes a duty by a real estate broker of the transferor to disclose the outstanding unemployment tax liability "[a]t least two calendar days . . . before acceptance of *an* offer." (emphasis added). The testimony of James Musselman—that before the Proctors accepted Great Lakes' offer to purchase the Proctors' land and business assets pur-

suant to the original listing, Wayne Stahl was aware of the Great Lakes offer and had discussed it with Glen Proctor—establishes circumstances that, if factually true, were clearly sufficient to trigger defendant's statutory duty to disclose the relevant information under the statute two days before the Proctors could accept the Great Lakes offer.

In our judgment, it is irrelevant that subsequent negotiations changed the nature of the transaction, even to the extent that at the conclusion of the transaction defendant was no longer the agent of the transferor. The duty to disclose is imposed on the transferor and the transferor's agent(s) in the time frame before the transferor responds to an offer. The statute does not provide that the duty may be imposed only as to those offers made by the ultimate transferee. Implicit in the legislative requirement of a two-calendar day moratorium on acceptance of an offer by the transferor is the opportunity and possibility that a person or entity making an offer, after having been informed of a previously undisclosed liability, may withdraw the offer or seek to restructure the transaction in light of the newly disclosed liability. Great Lakes clearly did not receive the information it was entitled to receive under the statute, irrespective of how the transaction was ultimately concluded. Moreover, defendant offers no basis on which we can conclude, nor can we conceive of any such basis (especially in light of the liability imposed on Great Lakes by MESC), that Great Lakes was not entitled to be made aware of this potential liability before its offer was responded to by the Proctors.

We also disagree with the trial court's conclusion that because defendant's representation was limited

to the real estate and the real estate constituted less than seventy-five percent of the ultimate transaction, defendant did not owe anyone a duty of disclosure. The plain language of the statute does not provide that the duty to disclose depends on the percentage of assets the broker or agent represents for sale. Representation of the transferor triggers the agent's duty to disclose, while the statute's reference to "75% or more of the assets" of the employing unit pertains to the determination whether the purchasing entity faces liability as a successor employer.

The trial court correctly concluded, however, that under the facts of this case the Musselmans are not entitled to damages under the statute. Regardless of whether they have suffered damages as the sole shareholders in Great Lakes, the statute provides that the real estate broker is liable "to the transferee." Because the Musselmans did not personally acquire "the organization, trade, business, or 75% or more of the assets from an employing unit," they are not "transferees" for purposes of the statute. Accordingly, MCL 421.15(g) does not provide them a remedy.

Finally, we reject defendant's contention that despite its failure to disclose the tax liability to Great Lakes, its good faith misunderstanding of its disclosure responsibilities under the statute provides an alternative basis to affirm the trial court's finding that defendant is not liable for consequential damages. In relevant part, MCL 421.15(g) states that "the real estate broker or other agent is not liable . . . if he or she exercised good faith in compliance *with the disclosure of information.*" (emphasis added). The plain language of the good faith provision unambiguously applies solely to an agent who disclosed inaccurate

information but does so in good faith, and offers no protection to an agent who, for whatever reason, makes no disclosure whatsoever.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.